**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **OMG BUILDING PRODUCTS, LLC** | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 26 CV _________ |
| **ADAM CINCOTTA** | ECF CASE |
| Defendant. | COMPLAINT<br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff OMG Building Products, LLC ("Plaintiff") files this Complaint against Defendant Adam Cincotta ("Defendant") and states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a Delaware limited liability company maintaining its principal place of business at 153 Bowles Road, Agawam, Massachusetts 01001.

2. Upon information and belief, Defendant is an individual residing at 29 Wedgewood Lane, South Windsor, Connecticut 06074.

3. Defendant is a former executive-level employee of Plaintiff.

4. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because this civil action is brought under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA").

5. This Court has supplemental jurisdiction over the state law claims asserted in this civil action pursuant to 28 U.S.C. § 1367(a), as such state law claims are so related to the federal

claims in this civil action that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court because the Bonus, Confidentiality, Non-Solicitation of Employees and Non-Solicitation of Customers Agreement (the "Agreement") giving rise to claims in this matter states that the federal and state courts located in the State of New York shall have "exclusive jurisdiction" with respect to any action or proceeding arising out of or related to this Agreement and the parties agree that venue for any such action is proper in any such court in the State of New York. A true and accurate copy of the Agreement is attached hereto as **Exhibit 1**.

7. Defendant executed the Agreement containing the above-referenced clause on or about September 14, 2025. Accordingly, venue and jurisdiction are proper in this Court. Ex. 1, ¶14.

## FACTUAL BACKGROUND

### OMG Building Products and its Business.

8. Plaintiff, OMG, is a leading manufacturer and global supplier of high-performance products for the commercial roofing industry.

9. OMG has distinguished itself in the market by offering advanced technologies designed to improve rooftop productivity while enhancing installation consistency and quality.

10. More than 65% of all commercial building built or re-roofed in the U.S. in the past 25 years use OMG products.

11. One of OMG's marquee products is its OlyBond500® roof insulation adhesive. OlyBond500® is a fast-acting, two-component, low-rise polyurethane foam adhesive designed to secure insulation to roof decks.

**OMG's Proprietary OlyBond500® Product**

12. OMG developed the commercialized OlyBond® product in 2001 and OlyBond500® in 2002.

13. Since the aforementioned dates, OMG has continued to develop and refine OlyBond® and OlyBond500® products creating the most highly advanced product in the industry, using proprietary technology created by OMG.

14. The OlyBond500® adhesive is frequently used by roofing installers on very large industrial buildings, such as data centers, which can have total areas range from <100,000 to >1,000,000 square feet of roofing coverage. According to the Pew Research Center, as of April 2026, there are more than 1,500 data centers in various stages of development in the United States.

15. The roofing adhesive industry is highly competitive. OMG guards its confidential and proprietary processes and technology with care and permits only a limited number of its employees with access to the proprietary formulas and technology. Such employees are also bound by Nondisclosure and Confidentiality agreements, among other protection measures.

16. In 2020, OMG commenced development of a new line of OlyBond®, to be branded with a unique OlyBond® name ("New OlyBond"). New OlyBond has not yet been released to the market.

**Defendant's Employment with Plaintiff and Access to Plaintiff's Confidential, Proprietary and Unique Information**

17. Defendant was employed by Plaintiff and/or its predecessor entity(ies) since 2014, and was initially hired as a product manager for the OlyBond® adhesives product line.

18. Defendant was most recently employed by Plaintiff as Vice President of Adhesives, having been promoted to that position in the fall of 2020.

19. At the time of his initial employment with the Plaintiff, Defendant did not have experience in the roofing adhesives industry. However, during his tenure as an employee of the Plaintiff, Defendant developed skills, knowledge and experience in the roofing adhesives industry, and in particular, had access to Plaintiff's confidential and proprietary technology and formulas as well as other competitively sensitive information.

20. As with most adhesive products, the formulation of the specific components of the adhesive can significantly change the properties and performance of the product. In Defendant's role as Vice President of Adhesives, Defendant worked closely with Plaintiff's Chief Chemist to understand the formulation of the New OlyBond product as it was being developed and as it was being readied to be released into the market.

21. Defendant's position as Vice President of Adhesives also provided him with access to Plaintiff's confidential and proprietary research, new product development information, and technical knowledge that was developed or was being developed by Plaintiff including, but not limited to, proprietary technology and development information which constitutes trade secret information of the Plaintiff, and to which Plaintiff has provided restricted access only to employees on a need to know basis in order for such employees to carry out their job responsibilities.

22. Defendant's duties in his role as Vice President of Adhesives was to lead efforts to exploit the most highly-leveraged business opportunities in the roofing adhesives market through strategic plans. This responsibility would have made Defendant not only aware of, but actually responsible for developing Plaintiff's adhesive products strategic plan. This information was highly confidential information on not only proprietary technology, such as product formulations for New OlyBond, and a more efficient dispensing delivery-system technology, but the specific confidential strategic plan, , to which Defendant had direct access, in his role as Vice President of

Adhesives. This information is confidential, proprietary, highly valuable to Plaintiff, and unique to Plaintiff's business operation and is a trade secret as that term is defined in the DTSA (hereinafter "Confidential Knowledge").

23. Within this Confidential Knowledge, Defendant was intimately aware of Plaintiff's efforts, over at least the past four (4) years, to develop New OlyBond by developing a new formulation that could be used in roofing installations at temperatures as low as 20º Fahrenheit and rising, including information on the formulation and proprietary technology to create New OlyBond. New OlyBond will be unmatched in the industry.

24. Plaintiff maintained the information about the New OlyBond development as a secret and protected the information on secure password protected data platforms; limited the employees who had access to such information; requiring employees and any business partners, including Defendant, to sign confidentiality agreements and/or non-disclosure agreements with Plaintiff; and securing the information so that only those employees of Plaintiff with a need to know the details thereof could gain access to the information.

25. Prior to Defendant's resignation of employment with Plaintiff, Plaintiff had taken all steps necessary prior to commercialization of the New OlyBond product and it was, and is, on the verge of release into the market.

26. Defendant was also aware of Plaintiff's confidential business information on its sales, margins, customers, customer's historic volume of purchases, and other such confidential information—essentially, at the time of his departure from Plaintiff, Defendant held all of the details to engage in unfair competition by using the confidential and proprietary information that Defendant obtained in his trusted position as the Vice President of Adhesives should he commence employment at one of Plaintiff's competitors.

27. Plaintiff's proprietary and unique information contained in the Confidential Knowledge provides a significant competitive advantage for Plaintiff and the disclosure of this information, to the public or to any direct competitors would cause significant damage to Plaintiff and its business.

28. Plaintiff uses and intends to continue to use the Confidential Knowledge in interstate and international commerce.

29. To safeguard its legitimate business interests and prevent the disclosure of highly confidential and proprietary information, Plaintiff asked Defendant to accept the Agreement in order to participate in the Plaintiff's parent company Steel Partners Holdings L.P.'s 2025 Short Term Incentive Plan (the "Bonus Plan").

30. Defendant knowingly and willingly executed the Agreement on or about September 14, 2025. *See* Ex. 1.

31. Defendant had previously executed agreements that were similar to the Agreement with the Plaintiff at times earlier than 2025.

32. Plaintiff paid Defendant the bonus pursuant to the Bonus Plan in March 2026.

33. In exchange for consideration provided by Plaintiff, including the bonus under the Bonus Plan, Defendant agreed to maintain certain confidentiality restrictions and post-employment obligations meant to protect and otherwise guard against disclosure of the Confidential Knowledge and Plaintiffs' confidential and proprietary trade secret information.

34. Defendant remains bound by the Agreement which includes, among other things, a prohibition on disclosing the Confidential Knowledge. Ex. 1, ¶6.

**Defendant's Resignation and Employment at a Competitor Who Makes A Competing Adhesive Product**

35. On information and belief, while Plaintiff was continuing to develop the New OlyBond product, Defendant was secretly negotiating with ICP Group ("ICP"), a formulator and manufacturer of specialty coatings, adhesives, and sealants serving the construction markets.

36. ICP is a direct competitor of Plaintiff.

37. In late spring or early summer 2026, Defendant had slowly begun to remove personal items from his office at Plaintiff's building in Agawam, Massachusetts. He gave no indication to anyone at Plaintiff that he was considering terminating his employment or searching for other employment opportunities. Further, Defendant continued his work supervising development of the New OlyBond product.

38. By June 10, 2026, an employee of Plaintiff communicated with Defendant about the financial issues that were facing ICP. These communications included links to articles describing how ICP had fallen in the S&P Global Ratings and related efforts by lenders to take control of ICP .

39. Further in these communications, the employee of Plaintiff questioned openly to Defendant whether ICP's customers should find back-up vendors for similar products.

40. Later on June 10, 2026, Defendant acknowledged receipt of the messages about ICP, then replied, "Beware of the Rising Phoenix" to the employee of the Plaintiff, suggesting that ICP, like the mythical bird that fell and burnt on a funeral pyre to rise from its ashes in the freshness of youth and live through another cycle of years, was preparing to rise from its own ashes.

41. Defendant waited until July 2026 to announce his resignation of employment from the Plaintiff. Upon his announcement, Defendant refused to disclose his new employer, even when asked by Plaintiff.

42. Thereafter, on or about July 22, 2026, Plaintiff admonished Defendant of his obligations under the Agreement.

43. Defendant then falsely reported to Plaintiff that he was not going to work for a "competitor" of Plaintiff.

44. Upon information and belief, Defendant began employment with ICP, on or about August 11, 2026 as ICP's Vice-President of Product Development.

45. ICP is the manufacturer and seller of a roofing adhesive product called APOC® Polyset®. APOC® Polyset® roofing adhesives provide low-pressure one- and two component foam adhesive solutions for steep slope roof tile adhesion and low slope commercial roofing applications.

46. ICP also manufactures the APOC® Polyset® product for a private label seller known as "Twin Jet Y."

47. APOC® Polyset® and Twin Jet Y are products that directly compete in the market with Plaintiff's OlyBond500® product.

48. However, APOC® Polyset® and Twin Jet Y can only be used in roofing installations at temperatures of 30º Fahrenheit and rising.

49. ICP does not manufacture or sell a roofing adhesive product that can be used in roofing installations at temperatures of 20º Fahrenheit and rising.

50. Upon information and belief, APOC® Polyset® and Twin Jet Y are known in the market to be unreliable in their performance if used by roofing installers when the ambient temperature is below 40º Fahrenheit.

51. Therefore, when released into the market, Plaintiff's New OlyBond product, which can be used in roofing installations at temperatures of 20º Fahrenheit and rising, will be far superior to those products manufactured and sold by ICP.

52. Upon information and belief, Defendant, by and through his employment with ICP, is engaging in work that utilizes or will inevitably utilize the confidential and proprietary trade secrets and Confidential Knowledge of Plaintiff, and particularly, sensitive technical information regarding the New OlyBond.

53. Upon information and belief, by and through his employment with ICP, Defendant is using or will use trade secrets and Confidential Knowledge to develop products and business plans for ICP to compete with Plaintiff related to the New OlyBond.

54. Upon information and belief, Defendant, by and through his employment with ICP, cannot engage in any meaningful work for ICP without the disclosure of or the inevitable disclosure of some or all of the Confidential Knowledge.

55. Upon information and belief, Defendant is in possession of other Confidential Knowledge, including, but not limited to, the development by Plaintiff of at least ten (10) additional proprietary adhesive or adhesive-related products that have qualities or features that are unique to Plaintiff and superior to other similar products made and/or sold by ICP or any other company and such Confidential Knowledge can be used by ICP to the disadvantage of Plaintiff.

56. And further, upon information and belief, Defendant had planned to leave the employment of Plaintiff at times at or prior to June 2026, to unlawfully take Plaintiff's Confidential Knowledge, and then to use that Confidential Knowledge to assist ICP in its efforts to rise from its ashes, just like the mythical phoenix, for the great benefit of himself and the detriment of Plaintiff.

57. More specifically, Defendant knew he intended to leave for a competitor in late spring or early summer when he started emptying of his office, and by mid-June knew he was going to ICP to save that company's failing business when he made his comments to a colleague suggesting that ICP would be a metaphorical "rising Phoenix." On information and belief, Defendant accepted a position with ICP and still remained employed as Vice President of Adhesives at Plaintiff.

58. Defendant continued for at least weeks—and possibly months—to obtain daily access to Plaintiff's most sensitive confidential and proprietary trade secret information—including the formulation, development strategy, performance targets, and market positioning for New OlyBond.

59. Understanding that taking such a position would cause alarm, Defendant continued his deception in his later refusal to identify his new employer, followed by his express misrepresentation to Plaintiff that he was not joining a competitor when he knew that he would be working at ICP, a direct competitor to Plaintiff, further evidences his deceptive mindset. Moreover, these facts, taken together, support the inference that Defendant was concealing the true nature of his move because his new role in product development at ICP depended on, or would benefit from, the disclosure or use of Plaintiff's confidential and proprietary trade secret information and, in particular, the Confidential Knowledge regarding New OlyBond.

## COUNT I

## VIOLATION OF THE DEFEND TRADE SECRETS ACT

60. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

61. Defendant had access to Plaintiff's confidential and proprietary trade secret information, including the Confidential Knowledge and information concerning the development,

formulation, manufacturing process, and related technical data for a fast acting, two component, low-rise polyurethane foam adhesive designed to secure insulation to be used in roofing installations at temperatures as low as 20° Fahrenheit, which is subject to protection under the DTSA.

62. The Confidential Knowledge is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use.

63. Plaintiff has spent significant sums, in terms of both financial and human resources, over more than four years to develop and maintain its confidential and proprietary information concerning the Confidential Knowledge, which would be of great value to any competitor.

64. New OlyBond (among other products) is a product used in, or intended for use in, interstate commerce as it is frequently used by roofing installers nationwide.

65. Plaintiff takes and, at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of the Confidential Knowledge. Those steps include: (a) IT policies; (b) restricting availability of certain confidential information to key employees; (c) requiring employees to execute agreements with confidentiality provisions and restrictive covenants; (d) physical security measures to protect against the disclosure of sensitive materials to third parties; (e) IT security measures, such as password protection for all computers.

66. Defendant owed and continues to owe duties of confidentiality to Plaintiff under his Agreement and as a former agent, employee, and representative of Plaintiff.

67. As a direct and proximate result of Defendant's actual and threatened misuse and misappropriation of Plaintiff's confidential and proprietary trade secret information, including the Confidential Knowledge, Plaintiff has suffered and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendant is enjoined from engaging in any acts of

misappropriation and from continued possession in any form of Plaintiff's Confidential Knowledge.

68. As a direct and proximate result of Defendant's misappropriation of Plaintiff's confidential and proprietary trade secret information, including the Confidential Knowledge, Plaintiff has suffered and/or will suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA.

69. Each of the acts of misappropriation was done maliciously by Defendant, thereby entitling Plaintiff to exemplary damages to be proved at trial.

## COUNT II

## BREACH OF CONTRACT

70. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

71. Defendant executed the Agreement which contains several confidentiality obligations and post-employment obligations.

72. The Agreement is a valid, enforceable contract between the parties.

73. Plaintiff has fully performed its obligations under the Agreement.

74. Defendant, by and through his employment with ICP, has breached and/or will breach the Agreement by disclosing the Confidential Knowledge to ICP, regardless of whether Defendant's actions are actual, threatened, or inevitable.

75. As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has suffered and/or will suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the Agreement and law.

76. Each of the acts of breach was done maliciously by Defendant, thereby entitling Plaintiff to exemplary damages to be proved at trial.

**COUNT III**

**INEVITABLE DISCLOSURE**

77. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

78. Plaintiff's Confidential Knowledge contains protectable trade secrets under the laws of the United States and the common law of New York.

79. Defendant had access to the Confidential Knowledge while employed with Plaintiff.

80. Defendant's employment with ICP is substantially similar to his employment with Plaintiff for an employer who is a direct competitor of Plaintiff.

81. Defendant's new job is so similar to his job at Plaintiff that the new job will require reliance on the Confidential Knowledge.

82. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and/or will suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under law.

83. Each of the acts of described above was done maliciously by Defendant, thereby entitling Plaintiff to exemplary damages to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

(a) Preliminarily and permanently enjoin Defendant from acquiring, using, and/or disclosing Plaintiff's Confidential Knowledge;

(b) Preliminarily and permanently enjoin Defendant from breaching the Agreement;

(c) Award compensatory damages in favor of Plaintiff and against Defendant in an amount to be proven at trial;

(d) Award exemplary damages in favor of Plaintiff and against Defendant in an amount to be determined under law;

(e) Award pre-judgment interest in favor of Plaintiff and against Defendant;

(f) Award Plaintiff attorneys' fees and costs incurred in this action to the extent such are recoverable at law or in equity; and

(g) Any other relief this Court deems just and proper.

[Signature contained on next page.]

Date: August 31, 2026

Respectfully submitted,

By: */s/Jacqueline M. Lesser*
***Jacqueline M. Lesser***

ICE MILLER LLP
1500 Broadway
29th Floor
New York, NY 10036
jacqueline.lesser@icemiller.com
Tel. 215-982-5165

*Counsel for Plaintiff OMG Building Products, LLC*

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

By: */s/Jacqueline M. Lesser*
***Jacqueline M. Lesser***